García et al., Demandantes y Apelantes, *v.* Aguayo et al., Demandados y Apelados.

Apelación procedente de la Corte de Distrito de Ponce en pleito sobre nulidad y otros extremos.

No. 2796.—Resuelto en julio 28, 1923.

Cosa Juzgada—*Litis Pendentia.*—Terminado un pleito por sentencia, si en otro se declara que dicha sentencia—alegada como cosa juzgada—es nula por

haber sido dictada sin darse la debida oportunidad a las partes, y se devuelve el caso para nuevo juicio, no cabe substituir con éxito por ese solo hecho la defensa de cosa juzgada por la de *litis pendentia*.

Herencia—Reclamación del Derecho Hereditario—Filiación.—No es acción de filiación aquella en que el demandante, alegando ser hijo legítimo y partiendo de la base del matrimonio de sus padres, reclama el reconocimiento de sus derechos a la herencia de uno de ellos.

Archivos Parroquiales—Destrucción de—Reconstrucción—Obispo—Certificación.—Destruído por incendio un archivo parroquial y decretada por el Obispo de la diócesis correspondiente la reconstrucción del libro de actas de matrimonio así desaparecido, es válida la copia certificada de cualquiera de sus asientos expedida por el funcionario eclesiástico encargado de la custodia del libro reconstruído.

Id.—Partidas de Bautismo y Matrimonio: qué Prueban.—Aunque las partidas de bautismo o matrimonio sólo constituyen prueba plena del acto que motiva su otorgamiento, sin embargo, en casos apropiados las manifestaciones en dichos documentos consignadas tienen también su fuerza probatoria.

Matrimonio—Prueba Supletoria—Testigos.—Aún cuando es bastante por sí sola para probar el matrimonio, la certificación del acta de su celebración expedida por el funcionario competente, es admisible prueba testifical de la existencia de dicho matrimonio, tanto más cuando se trata de un caso en que el acta ha sido reconstruída y se impugna por la parte contraria su eficacia.

Los hechos están expresados en la opinión.

Abogado de los apelantes: *Sr. L. Muñoz Morales.*

Abogados de los apelados: *Sres. J. y M. Tous Soto.*

El Juez Presidente Sr. del Toro, emitió la opinión del tribunal.

Desde hace cerca de veinte años la demandante en este pleito está luchando porque se le reconozcan sus derechos como hija legítima de don Juan García Villaraza y de su esposa doña Manuela Fernández y Rodríguez. *Aguayo et al.* v. *García,* 11 D. P. R. 274; *García* v. *Aguayo et al.,* 29 D. P. R. 1022.

Alega la demandante en su demanda que don Juan García Villaraza falleció en Pará, Brasil, el 27 de abril de 1899, en estado de casado con la demandada doña Josefa Aguayo, dejando como únicos herederos a su hija la demandante, a su otra hija la demandada Graciela García y Aguayo y a su viuda la dicha demandada doña Josefa Aguayo. Que su padre murió intestado, dejó bienes y su último domicilio fué Ponce, Puerto Rico.

Hechas esas alegaciones generales, sostuvo como primera causa de acción la demandante, que la demandada doña Josefa por sí y en representación de su hija Graciela, no obstante constarle la condición de hija legítima de la demandante, solicitó y obtuvo de la Corte de Distrito de Ponce que se les declarara únicas herederas de don Juan García, inscribiendo a su nombre los bienes de la herencia. Como segunda causa de acción, que con motivo de los actos reseñados en la primera, las demandadas habían ocasionado a la demandante perjuicios montantes a más de veinte mil dólares. Y como tercera causa de acción especificó la demandante los bienes inmuebles adquiridos por la demandada doña Josefa Aguayo con las rentas producidas por el caudal hereditario de don Juan.

A virtud de los hechos alegados pidió la demandante que se decretara la nulidad de la declaratoria de herederos y de las inscripciones en el registro; que se declarara que las personas con derecho a la herencia lo eran la demandante y las demandadas; que se ordenara la partición de la herencia y que se condenara a las demandadas a pagarle $22,800 y las costas.

Contestaron las demandadas aceptando el hecho de la muerte del señor García, negando que la demandante fuera su hija legítima, y sosteniendo que ellas eran sus únicas herederas. Se expuso en la contestación que la demandada conocía la existencia de la demandante, que se excluyó de la declaratoria de herederos por consejos de un abogado y que deseando darle una oportunidad de probar su derecho a la herencia se entabló demanda contra ella a fin de que la corte declarara quiénes eran los únicos herederos haciéndolo así la corte por sentencia de 25 de abril de 1908 que decidió el pleito en favor de la demandada y de su hija Graciela. Se negaron los daños y perjuicios. Se alegó primero la cosa juzgada y luego que existía un pleito pendiente entre las mismas partes. Se sostuvo que la partici-

pación de la demandada Graciela en la herencia había sido vendida a don Roque Pérez y que éste era un tercero hipotecario, y por último se alegó que la acción de filiación que pudiera corresponder a la demandante había prescrito.

El pleito fué primeramente fallado por la Corte de Distrito de Ponce en contra de la demandante basándose principalmente la sentencia en que los derechos de las partes habían sido definitivamente juzgados. Apelada la sentencia fué revocada por esta Corte Suprema, ordenándose la celebración de un nuevo juicio. *García* v. *Aguayo et al.,* 29 D. P. R. 1022. En el curso de la opinión se expuso que habiéndose dictado la sentencia que se invocaba como cosa juzgada, sin dar una oportunidad a las partes, tal sentencia era enteramente nula. Fué a virtud de esa declaración seguramente que la demandada al volver el pleito a la corte de distrito hizo su alegación de *litis pendentia.*

Celebrado el nuevo juicio acordado, otra vez la corte declaró la demanda sin lugar, interponiendo entonces la demandante la presente apelación.

A los efectos de despejar la situación, diremos que además de la muerte del Sr. García, está probado fuera de toda duda que al morir dejó bienes y que las demandadas fueron declaradas judicialmente sus únicas herederas y que como tales inscribieron los bienes, los poseyeron y disfrutaron de sus rentas y productos. Y con el mismo fin consignaremos que a nuestro juicio carecen de mérito la defensa de *litis pendentia* y las cuestiones de tercero y prescripción. La primera, porque el pleito resuelto por la sentencia de 25 de abril de 1908 quedó terminado. Si luego colateralmente se ha declarado que la sentencia era nula, no importa. La segunda porque no siendo el Sr. Pérez parte en este litigio en nada puede perjudicarle la sentencia que contra él se dicte. Y la tercera porque aquí no se ejercita por la demandante la acción de filiación. Ella parte de la base del matrimonio de sus padres.

Y ahora entraremos de lleno en la cuestión básica del pleito, a saber: ¿Probó la demandante el matrimonio de sus padres? Veámoslo.

La primera prueba aportada por la parte demandante fué un documento que aparece transcrito en la opinión de esta corte en *García* v. *Aguayo et al.,* 29 D. P. R. 1022, 1025.

La parte demandada se opuso a la admisión del documento así:

"Tenemos que hacer una larga objeción a este documento y vamos a dictársela al taquígrafo. Realmente esta es la cuestión más importante del juicio. Nos oponemos a la admisión de este documento:—Primero: Porque no es una transcripción del asiento original de la celebración del matrimonio obrante en el archivo parroquial correspondiente, extendida por el ministro celebrante conjuntamente con la celebración del matrimonio en cumplimiento de su cargo, en el curso de su empleo o ministerio.—Segundo: Porque dicho asiento original (*entry*) del matrimonio en el libro correspondiente al expedirse la certificación, no existía y sin justificarse que hubiera existido alguna vez, que después desapareció o fué destruída, caso único en que sería admisible prueba supletoria o secundaria, de acuerdo con el artículo 154 y 350 del Código Civil y artículo 24 número 1 de la Ley de Evidencia no puede ser admisible.—Tercero: Porque la supuesta reconstrucción del asiento en el libro de matrimonios no ha sido hecha por autoridad competente, que en este caso lo sería el obispo, en adecuado procedimiento, sino que es un nuevo asiento extendido en un libro provisional de matrimonio el dos de octubre de 1918 después de fallado el pleito anterior entre las mismas partes y sobre los mismos *issues* que el presente, que lo fué en 25 de abril de 1908 y pocos días antes de comenzarse el presente pleito en 7 de noviembre de 1918, habiéndose confeccionado dicho documento en el extranjero por un sacerdote que no celebró ni asistió al supuesto matrimonio de que se trata, ni era párroco de Guira de Melena a la sazón, sin que firme ningún testigo de dicho matrimonio o persona que lo presenciara, ni se diga la fuente de información del sacerdote reconstructor o confeccionador, ni se haya oído o dado oportunidad de ser oídas las partes interesadas, ni aparece la autoridad de dicho sacerdote para extender el nuevo asiento.—Cuarto: Porque dicho documento no es sólo *hearsay* de la peor clase, sino un *self-serving evidence,* con-

feccionada después de este litigio entre las partes sobre el hecho preciso que trata de probarse con esta evidencia de reciente confección o sea de dos de octubre de 1918, habiéndose expedido certificación al día siguiente de confeccionada, o sea el tres de octubre.—Quinto: Porque la certificación de dicho documento no se ajusta en su forma al artículo 69, número 8 de la Ley de Evidencia.—Sexto: Porque en la fecha que se dice celebrado el matrimonio estaba vigente en Cuba la Ley de Registro Civil y desde esa fecha no era admisible para probar el matrimonio, otra prueba que la certificación del Registro Civil y aún cuando se hubiera celebrado antes el matrimonio de regir dicha ley, de acuerdo con las disposiciones vigentes entonces, los asientos de los libros parroquiales debieron transcribirse a los libros del Registro Civil.''

La corte resolvió que el documento era ''incompetente por la forma en que fué reconstruído el récord y también por la forma en que fué autenticado por el Cónsul.''

La parte apelante sostiene en su alegato que el documento era admisible como evidencia primaria. Parece oportuno transcribir las razones que aduce para ello. Están perfectamente condensadas así:

''La parte demandante apelante sostiene ahora: (*a*) Que dicho documento es admisible: Porque es la certificación de un documento original que consta en el libro parroquial de la Parroquia de Güira de Melena. (*b*) Porque esa certificación está expedida por el funcionario encargado de la custodia del original. (*c*) Porque ese original se extendió en virtud de un decreto de autoridad competente con motivo de haberse quemado el antiguo archivo de la iglesia. (*d*) Porque ese decreto autorizó el expediente en el que se aportarían todos los datos y pruebas necesarias para la reconstrucción de las actas originales que fueron destruídas por el incendio. (*e*) Porque las pruebas y datos necesarios para la reconstrucción de esa acta deben constar en el expediente general y no en cada una de las actas especiales. (*f*) Porque ese documento fué asimismo autenticado por autoridad competente, haciéndose constar que quien expidió el certificado era persona que tenía bajo su custodia el documento original. (g) Porque aparece también debidamente legalizado por el cónsul americano en la Isla de Cuba, y esta legalización en nuestro concepto está de acuerdo sustancialmente con lo que prescribe el artículo 69 No. 8 de la Ley de Evidencia.

"Insistimos una vez más en sostener que el mencionado documento no constituye evidencia secundaria, sino que tiene el carácter de primaria según los artículos 7 y 24 de la Ley de Evidencia, porque no se ha extraviado ni destruído el original de donde fué expedida la certificación presentada.

"En este caso se destruyó el archivo parroquial donde figuraba la partida de matrimonio y mediante el oportuno expediente fué reconstruída y asentada esa partida en el libro correspondiente, haciéndose constar la fecha del decreto episcopal que autorizó el nuevo asiento; este nuevo asiento es el documento original a que la certificación se refiere.

"Por otra parte este es un documento público, auténtico, expedido con arreglo al derecho Canónico."

A nuestro juicio la corte de distrito erró al negar la admisión del documento y su error aparece aún más claro cuando se considera el testimonio de Florencio García, un sacerdote, conocedor del Derecho Canónico, a quien no la demandante sino la propia demandada Sra. Aguayo encomendó que averiguara personalmente si la reconstrucción de la partida del matrimonio de los padres de la demandante se había hecho conforme a las leyes canónicas. Declaró que conocía personalmente al párroco Luciano García y vió la partida original asentada en el libro supletorio formado a virtud del incendio del archivo en tiempos de la última guerra de Cuba con España. No se permitió al testigo que expresara su opinión, ni que describiera el expediente del cual había emanado la partida reconstruída, pero a pesar de la tenaz oposición de la parte demandada y de la actitud de la corte, de su declaración aparece la existencia del expediente visto por él.

Se ha insistido en que sólo al Obispo de la Diócesis a que pertenecía la parroquia, correspondía la reconstrucción de la partida. Estamos enteramente conformes en que es el Obispo la primera autoridad de la Diócesis y la única que puede ordenar la reconstrucción de archivos parroquiales destruídos, y así resulta del documento de que se trata en

este caso. En él se dice: "Y en cumplimiento del decreto del Exmo. Sr. Obispo Diocesano de fecha 23 de junio de 1896, por haberse quemado el archivo de esta iglesia el día cinco de enero de este año noventa y seis, yo, presbítero Luciano García y González, Cura Párroco interino de la misma, lo firmo a dos de octubre de 1918." Y la certificación expedida por el párroco fué al Obispado y en el Obispado se legalizó su firma por el funcionario con autoridad para ello.

No se ha citado por ninguna de las partes ni hemos podido encontrar nosotros el texto exacto de la ley canónica que fija la norma que debe seguirse para reconstruir los archivos parroquiales destruídos por incendio o cualquiera otra causa, y siendo ello así debe presumirse que la orden del Obispo se dictó de acuerdo con la ley y de conformidad con ella fué cumplida. Una vez que el libro supletorio fué formado y las partidas destruídas quedaron nuevamente inscritas en él, sus asientos tienen la condición de originales y el funcionario que los custodia puede expedir certificaciones válidas. Toca a la parte demandada demostrar la ineficacia del documento, si es realmente ineficaz de acuerdo con los hechos y la ley. *Prima facie*, repetimos, es válido y debió admitirse y reconocérsele todo el valor que las leyes y la jurisprudencia reconocen a los documentos de igual naturaleza.

En el caso de Estados Unidos contra De Vera, 28 J. F. 108, la Corte Suprema de Filipinas, decidió, copiamos del resumen, lo que sigue:

"Siendo la Iglesia Católica Romana una entidad jurídica (Barlin contra Ramírez, 7 Jur. Fil., 42) y no perteneciendo los libros de casamientos que se llevan en las parroquias de dicha iglesia a los curas o sacerdotes que las regentan, sino a la referida entidad, la presentación del asiento en que se halle consignada la celebración de un matrimonio y del libro que lo contuviere, hecha por el cura párroco que estuviere regentando la parroquia cuando se celebre el

juicio y su declaración respecto a la autenticidad del documento y a la verdad del hecho en él consignado, producen los mismos efectos que si se hubiesen hecho por el sacerdote que solemnizó el matrimonio y firmó el asiento, por referirse a acto ejecutado por un representante de aquella entidad jurídica en el ejercicio de sus deberes eclesiásticos y consignado en un libro de la misma entidad durante el curso de sus negocios.''

Pero hay más en este pleito. No sólo se presentó la certificación indicada y la declaración del sacerdote García, si que también se aportaron dos documentos más y varias declaraciones de testigos.

Los documentos fueron: La partida de bautismo de la demandante y la de matrimonio del padre de la demandante con la demandada Sra. Aguayo. En la primera se hizo constar que la niña Elvira era ''hija legítima del Dr. D. Juan García natural de Málaga; y de la Sra. Doña Manuela Fernández natural de la Habana y vecinos de esta feligresía.'' En la segunda se consignó que el padre de la demandante era ''viudo de Dña. Manuela Fernández que falleció. * * * '' El primer documento es de fecha 8 de diciembre de 1884. El segundo de 28 de noviembre de 1891.

Repetidamente se ha establecido que los documentos de tal naturaleza sólo constituyen prueba plena del acto que motiva su otorgamiento, pero no puede negarse que en casos apropiados las manifestaciones en dichos documentos consignadas tienen también su fuerza probatoria.

En el caso de *Ex parte Otero et al.* y *Striker* v. *El Pueblo*, 27 D. P. R. 340, después de un cuidadoso estudio de la materia, se estableció la siguiente doctrina:

''Las partidas de bautismo extendidas con arreglo al derecho canónigo en los libros parroquiales por los sacerdotes antes de la implantación del registro civil en Puerto Rico, tienen el carácter de documentos públicos y constituyen prueba *prima facie* en cuanto al parentesco entre el bautizado y la persona que como madre natural se asigna a éste en la inscripción. De acuerdo con esta doctrina en tales casos la filiación natural queda establecida aunque de la par-

tida bautismal no resulte el reconocimiento expreso hecho por la madre tal como se exije cuando se trata de establecer la relación filial en cuanto al padre natural."

El principio así establecido se aplicó en el caso de *Tardi* v. *Tardi,* 30 D. P. R. 225, 231.

La Corte Suprema de Filipinas en el caso de *Sison* v. *Ambalada,* 30 Jur. Fil. 131, se expresó así:

"Presunción juris es que el hombre y la mujer que viven maritalmente han celebrado un contrato legal de matrimonio. (Cód. de Proc. Civ., art. 334, No. 28.) Las presunciones establecidas por la ley pueden destruirse por la prueba en contrario. (Cód. Civ., art. 1251.) La prueba en contrario incumbía al demandado, y no la ha hecho en manera alguna, por no ser prueba en contra de la presunción de la ley la falta del certificado de matrimonio en los libros de la parroquia de Balayan, en los cuales se ha visto que algunos otros asientos faltaban tan interesantes como el del matrimonio de que se trata. La falta de asiento de un acto o hecho en determinados libros de registro no es desde luego prueba de la inexistencia del hecho o acto, fuera de los casos en que la ley taxativamente requiere como prueba esencial el asiento mismo o la inscripción del hecho o acto que se trata de probar. Hay de particular en este caso, en apoyo de la presunción *juris* establecida, que Julián Ambalada insiste con encarecimiento en su afirmación de que desde su infancia había vivido siempre al lado del Padre Gabino de los Reyes hasta su fallecimiento. Este fué párroco de Balayan. Se ha probado de manera fehaciente, y es hecho admitido por las partes contendientes, que el Padre Gabino de los Reyes fué sacerdote de probidad reconocida, y como tal párroco de Balayan no hubiera autorizado falsamente el asiento en los libros canónicos de su parroquia del bautizo de las dos hijas de Julián Ambalada y Modesta Afable llamadas ambas María Ambalada, nacidas la una en 1873 y la otra en 1875, inscribiéndolas como hijas legítimas y de legítimo matrimonio de Julián Ambalada y Modesta Afable. (Exhibits A. y D.) De conocimiento propio, según los antecedentes establecidos por el mismo demandado, y llevado de propia convicción debió hacer semejantes asientos que al asegurar la legitimidad de tales hijas daba por supuesta al propio tiempo la legitimidad del matrimonio de sus padres.

"Cualquiera que hubiera sido la causa de la falta de asiento están los hechos que constan en los autos, bien concluyentes todos ellos en favor del matrimonio afirmado en la sentencia apelada."

En el curso de la opinión en el caso de *Estados Unidos* contra *De Vera, supra,* la Corte Suprema de Filipinas dijo:

"En el caso de Blackburn v. Crawford's Lessee (3 Wall., 175), en el que el apelante se opuso a la admisión del asiento de un registro de bautismo como prueba, porque el ministro o sacerdote que había hecho dicho asiento vivía aún y era accesible o podía ser llamado y debió haber sido examinado en cuanto al punto que era objeto de la cuestión, el tribunal dijo:

" 'Han probado (los apelantes) que el libro era el registro de bautismo de la iglesia de San Patricio de la ciudad de Washington; que el rito y usos de la iglesia requieren que tal registro se lleve, asentándose en él los bautizos; y que este registro era de puño y letra del Rev. John P. Donelan, quien actualmente es pastor auxiliar de la iglesia. El apelante se opuso a la prueba por considerarla inadmisible, sea cual fuere el fin para que se presentara. Alegó que de ser admitido sólo es competente para probar el hecho del bautizo y la fecha en que tuvo lugar. El juzgado desestimó ambas objeciones y admitió el asiento como prueba, "no sólo del hecho del bautizo, y de la fecha del mismo, sino también del hecho de que dicho George T. Crawford fué bautizado como hijo legítimo de Thomas B. Crawford y de Elizabeth Taylor, su esposa."

" 'El registro era admisible bajo el fundamento de que los asientos fueron hechos por el que lo escribió en el curso ordinario de sus deberes.' "Bishop en su obra arriba citada (Tomo I, párrafo 1013), al ocuparse de la decisión anterior añadió: 'La misma regla, se estimó, que sería igualmente aplicable a registros llevados, de conformidad con la respectiva regla eclesiástica, dentro de cualquier denominación religiosa.' " 28 Jur. Fil. 114.

A grandes rasgos diremos que la prueba testifical tendió a demostrar que al contraer el padre de la demandante su nuevo matrimonio con la demandada Sra. Aguayo, el retrato de la madre de la demandante continuó en la sala de la casa. Dadas nuestras costumbres sociales, esta prueba era importante porque no cabe pensar siquiera que el re-

trato de una querida figure en sitio ostensible en el hogar de una legítima esposa. Y tendió a demostrar además dicha prueba que los padres de la demandante fueron conocidos viviendo juntos por más de cinco años y juntos frecuentando la sociedad de la Habana. Sin embargo la corte, cometiendo un manifiesto error, a nuestro juicio, no permitió a los testigos que declararan cuanto sabían porque entendió que no podía permitirse prueba supletoria del matrimonio de los padres de la demandante. Lo que hemos indicado surge de manifestaciones que no pudo evitarse que hicieran los testigos.

Habiéndose resuelto el pleito por una moción de *non suit;* no habiendo tenido oportunidad la corte de distrito de apreciar la prueba puesto que rechazó la partida de matrimonio de los padres de la demandante, no reconoció valor alguno a las partidas de bautismo de la demandante y del nuevo matrimonio de su padre, y no permitió declarar a los testigos; pudiendo tal vez la otra parte presentar prueba que destruya el valor de la aportada por la parte demandante, nos parece que la resolución apropiada es devolver el pleito para un nuevo juicio de conformidad con los principios establecidos en la opinión, en la esperanza de que esta vieja controversia quede definitiva y justamente resuelta. Y así se acuerda.

*Revocada la sentencia recurrida y devuelto el caso para nuevo juicio.*

Jueces concurrentes: Sres. Hutchison y Franco Soto.

El Juez Asociado Sr. Wolf firmó "Conforme con la revocación y la concesión de un nuevo juicio, pero no con la opinión."

El Juez Asociado Sr. Aldrey firmó "Conforme con la concesión del nuevo juicio pero no con los fundamentos de la opinión."

OPINIÓN CONCURRENTE DEL JUEZ ASOCIADO SR. WOLF.

Este es un caso de una hija reputada por años como legítima que se ha visto obligada a tratar de probar, o se propone probar el matrimonio de sus padres.

Para probar la demandante dicho matrimonio ofreció como prueba la certificación que se trancribe en las páginas 1025 y siguientes del tomo 29 de nuestras Decisiones. En esta decisión resolvimos que la pertinencia (*competency*) del documento debió haber sido resuelta por la corte inferior. El caso fué devuelto para la celebración de un nuevo juicio y después de una amplia vista, la corte a mi juicio, debidamente se negó a admitir el documento. Varios son los alegados defectos. Me inclino al parecer de que la certificación consular fué suficiente, pero también estoy convencido de que el documento no demuestra la debida autoridad. La alegada partida de matrimonio parece ser un documento reconstruído, o sea, una certificación expedida en octubre del año 1918, por el cura párroco de la parroquia, en la cual se hace constar que los archivos de la Iglesia se quemaron en enero 5, 1896, y que en cumplimiento del decreto del Obispo de fecha junio 23, 1896, dicho cura párroco la firma. Se alega que el matrimonio fué celebrado en el año 1883. El decreto del Obispo al cual se hace referencia es uno general, y no consta en absoluto que el Obispo haya intervenido en la reconstrucción del actual archivo de la parroquia, habiendo sido expedido en el año 1918.

Según mis investigaciones, es ley canónica o eclesiástica, y así lo indicamos en el caso de *García* v. *Garzot,* 18 D. P. R. 866, que el Obispo es el funcionario de la Iglesia que habla a nombre de ésta y que sus funciones cuando son legales o quasi legales reúnen tanto los deberes de un juez como de un secretario. Esto se indica además en la obra Pollock & Maitland, Historia de la Ley Inglesa, tomo I, página 110, y por las varias secciones de la enciclopedia

bajo el título de "Obispo." Es el Obispo quien tiene que estar satisfecho de que una partida de matrimonio merece ser reproducida. El es como un canciller en una corte de equidad. Aunque puede delegar en otros para considerarla, debe estar convencido de la prueba y certificar en cuanto a su veracidad.

Una delegación general de autoridad por parte del obispo no es, a mi juicio, suficiente. El debe resolver cada caso. Además, en el presente caso no existe absolutamente nada en el documento transcrito que demuestre que el obispo dió semejante autorización general al cura de la parroquia. La naturaleza de la orden general de 1896 no se acredita. Puede haber sido una orden general confiriendo a los curas de parroquia el derecho a certificar los récords de la Iglesia.

El hecho de que un cura párroco pueda certificar con respecto a la inscripción de matrimonio, no levanta ninguna presunción de que un récord destruído ha sido debidamente reconstruído. Cuando un funcionario certifica, su autoridad para certificar debe probarse. Generalmente asumimos la facultad que tienen ciertos funcionarios, así como los secretarios de las cortes, porque más o menos tenemos conocimiento de sus facultades generales. Sin embargo, me aventuro a afirmar, sin hacer ninguna cita, de que antes de que un funcionario particular pueda certificar en cuanto a la existencia de un récord, las cosas sobre las cuales se certifica deben estar comprendidas dentro del radio de sus obligaciones. En este caso todo lo que teníamos ante nuestra consideración era la certificación sobre la existencia de un documento. No hubo ninguna demostración a mi juicio, de que dicho documento fué debidamente reconstruído.

Al revocar este caso en la vista anterior manifestamos que estábamos dispuestos a dar a la apelante una oportunidad de probar el matrimonio *aliunde*. Dijimos entonces "No estamos tan seguros de que no exista otra prueba de

crédito o semejante que pueda tender a aclarar la alegada partida de matrimonio, si en realidad es defectuosa.'' La apelante en el juicio tomó esta declaración al pie de la letra y ofreció cierta alegada prueba supletoria de reputación o semejante, para demostrar el alegado matrimonio de sus padres. La corte rehusó admitir ninguna parte de ella. La apelante tomó excepción pero no consignó ningún error.

En la forma en que la prueba fué ofrecida la corte tal vez tuvo razón. La apelante se fundaba en la partida de matrimonio. Los apelados se oponían no sólo a la pertinencia (*competency*) de la partida sino también a su valor probatorio y la apelante ofrecía prueba supletoria. Toda la controversia principal, como fué presentada, era sobre la partida de matrimonio y la prueba para sostenerla. La apelante no trató de fundarse en la presunción contenida en el artículo 102, párrafo 29 de la Ley de Evidencia, el cual es como sigue:

''Que un hombre y una mujer que se conducen como casados, han celebrado un contrato legal de matrimonio.''

Esta sería una forma independiente de pretender probar el matrimonio. Necesariamente esta presunción es refutable y el hecho de la reputación siempre debe establecerse claramente. Además, si los padres de Elvira se tenían por casados en una fecha en que sostuvieron relaciones adúlteras, tal hecho ayudaría a destruir la presunción del matrimonio.

Normalmente una corte de apelaciones dejará a las partes que cuiden de sus propios derechos, pero las cortes tienen un interés especial en sostener y mantener el matrimonio. Tenemos aquí un caso en el cual Elvira García puede o no ser legítima. El punto en controversia no ha sido determinado. Ella sencillamente fracasó en la prueba ofrecida y creemos que el matrimonio *vel non,* aun cuando fuera establecido por una presunción, debe ser resuelto por

la corte. Los escritos de alegaciones en este caso no se limitan a la prueba del verdadero matrimonio en Cuba aunque la misma apelante se limitó a eso en el juicio. Desde luego que si la apelante dejó de establecer, mediante una preponderancia de prueba, que su padre y madre se condujeron como casados o lo que es equivalente, la presunción fué seriamente contradicha.

Por tanto, de acuerdo con las amplias facultades conferidas a esta corte, y en bien de la justicia, estoy enteramente de acuerdo con la revocación del caso y la concesión de un nuevo juicio.