Elvira Juana Manuela Joaquina García Fernández, Demandante-apelada, v. Josefa Aguayo, et al., Demandados-apelantes.*

.No. 3898.—Resuelto Febrero 4, 1929.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. ALDREY, CON LA CUAL ESTÁ CONFORME EL JUEZ SR. WOLF.

La historia de la controversia entre las partes de este pleito, en la que respectivamente han sido demandantes o demandadas, puede verse en las opiniones de este Tribunal que se hallan en los tomos siguientes: 11 D.P.R. 274; 29 D.P.R. 1022; 32 D.P.R. 422; 34 D.P.R. 516; y 35 D.P.R. 953.

En 1899 se promovió una declaratoria de herederos por Josefa Aguayo para que su hija fuese declarada única heredera de Juan García Villarraza, seguida poco tiempo después por un pleito establecido por la misma Josefa Aguayo contra los hermanos Elvira y Rodolfo, apellidados García y Fernández, para que se declarase que no son hijos legítimos de Juan García Villarraza ni tienen derecho a su herencia como pretenden, en cuyo pleito los demandados alegaron ser tales hijos legítimos según sus partidas de nacimiento, aunque después Rodolfo se allanó a la demanda, y la sentencia que fué dictada fué revocada por este Tribunal en 1906 para nuevo juicio. Nada se hizo después de esa fecha, y doce años después, en 1918, empezó la verdadera contienda entre las partes en un pleito promovido por Elvira García contra Josefa Aguayo y su hija para que se declarase que tiene derecho a la herencia de Juan García Villarraza por ser hija legítima suya, o sea cinco años antes de ser dictada nuestra sentencia en 1923 en la demanda de Elvira García (32 D.P.R. 422).

---

* Véase la opinión del Tribunal en la página 91.

978

La contienda fundamental a resolver es si la demandante Elvira García ha probado que su madre Manuela Fernández Perdigón contrajo matrimonio con Juan García Villarraza, y por consiguiente si ella es hija legítima con derecho a heredar a dicho Juan García Villarraza. Para probar ese matrimonio fué presentada la partida reconstruída del matrimonio alegado, que no reproducimos literalmente por hallarse transcrita en el tomo 29, página 1025, de nuestras decisiones. Es, en pocas palabras, una certificación librada por el cura interino de la Parroquia de San José de Güira de Melena, Provincia y Diócesis de la Habana en la República de Cuba, creditiva de que en un libro supletorio de matrimonios de aquella parroquia se encuentra una partida matrimonial de Juan García Villarraza con Manuela Fernández Perdigón como celebrado el 29 de noviembre de 1883 ante el Presbítero Rafael Asunción Toumil y Zapela, cura entonces de ella, y que en cumplimiento del decreto del Exmo. Sr. Obispo Diocesano fechado en 23 de junio de 1896, por haberse quemado el archivo de la iglesia el 5 de enero de ese año, firma el acta a 2 de octubre de 1918. La firma y rúbrica de esa certificación fueron certificadas como al parecer iguales a las que usa dicho cura por el Arcediano de la Habana; y la firma de este funcionario eclesiástico fué certificada por el Cónsul General de los Estados Unidos en la Habana, República de Cuba, como verdadera y genuina.

Del acta reconstruída a que nos referimos aparece que en 1896 decretó el Sr. Obispo Diocesano que el archivo de Güira de Melena fuese reconstruído, pero en ella no constan las diligencias que fueron practicadas para reconstruir el acta de ese matrimonio, ni tampoco que fueran aprobadas por el Obispado, y que éste ordenase la inscripción como resultado de dichas diligencias, ni por dicha acta se sabe en qué consistió la investigación; y de la prueba que ha sido presentada por la parte demandada resulta que no se presentó prueba alguna de que en esa parroquia existiera acta alguna

del matrimonio de Manuela Fernández Perdigón con Juan García Villarraza anterior al incendio, y ni siquiera fué presentada certificación alguna del acta que se dice existió, sino que la investigación practicada por el Cura de esa parroquia consistió en la comparecencia de Elvira García, la que sin juramento dijo refiriéndose a hechos anteriores a su nacimiento, por lo que no podía conocerlos de ciencia propia, que en esa parroquia fueron desposados sus padres el 29 de noviembre de 1883, quién fué el párroco que celebró el matrimonio así como los testigos y los padrinos que intervinieron, y otros particulares que omitimos por innecesarios ahora; y para esos hechos, ocurridos quince años antes, presentó dos testigos cuya edad precisa no consta por haberse limitado ellos a decir que son mayores de edad, y bajo juramento y previa lectura de la declaración de Elvira García que les fué hecha manifestaron que por relación de vecindario les constaba ser verdad cuanto la promovente expuso.

Un asiento de un archivo es la prueba primaria de su contenido, y por eso entiendo que para que tal asiento pueda ser reconstruído substituyéndolo por otro asiento como supletorio de aquél por haber sido destruído, es requisito necesario y previo demostrar que el primitivo asiento existió en el archivo destruído, y en este caso ni se alegó ni se probó ante el cura párroco que el acta matrimonial a que venimos refiriéndonos existía en el archivo parroquial destruído por el incendio. Los testigos que declararon en el expediente de reconstrucción del acta matrimonial se limitaron a decir que eran mayores de edad, cuando en este caso era necesario saber su edad para poder apreciar el valor de sus declaraciones sobre hechos ocurridos quince años antes; y sobre todo no declararon que les constaba de conocimiento propio que ese matrimonio fué celebrado en la fecha que se dice ni que tal acta existía en el archivo parroquial, sino que lo dicho por Elvira García les constaba por relaciones de ve-

cindario, resultando así esa prueba de referencia (*hearsay*). El Codex Juris Canonici que fué admitido como prueba, promulgado en 27 de mayo de 1927 y vigente desde mayo 19, 1918, o sea antes de que se instruyera ese expediente en 2 de octubre de 1918, niega valor probatorio a esa clase de declaraciones en sus canónes 1772, 1789, 1790 y 1791, que están comentados en la obra del P. Juan B. Ferreres, sobre Instituciones Canónicas, tomo 2º, páginas 343, 347 y 733.

Además, ese expediente de la naturaleza de los *ad perpetuam rei memoriam,* tenía que ser aprobado por alguna autoridad eclesiástica, pues no es bastante el solo hecho de las declaraciones prestadas sino el juicio que de ellos se forme, y en este caso ninguna autoridad eclesiástica impartió su aprobación para que fuese hecha la reconstrucción del asiento de matrimonio, función que correspondió al Vicario General del Obispado en nombre y representación del Obispo por tratarse de un expediente de jurisdicción voluntaria. Ferreres, *supra,* tomo 1º, página 272. En el caso de *García* v. *Garzot,* 18 D.P.R. 877, en el que se trataba de un expediente eclesiástico tramitado en 1892 para el asentamiento en un libro parroquial del bautismo de un niño nacido en 1872, las declaraciones fueron tomadas por el cura párroco por comisión que para ello le dió el Obispo, y ese expediente fué aprobado por el Obispado autorizando al párroco para hacer el asiento de dicho nacimiento y bautismo. Ese caso indicó la aprobación del Obispado como trámite necesario en esas informaciones. En un pleito seguido en España se trató de probar un matrimonio no por el acta contemporánea sino por el asiento hecho años después en virtud de un expediente tramitado por orden del Obispo, que fué aprobado por el provisor y vicario, y el Tribunal Supremo, en su sentencia de 6 de diciembre de 1902, 92 J.C. 560, no dió valor a ese documento declarando que tal asiento no puede confundirse con la partida sacramental del matrimonio que el párroco que asistió a él escribe en el libro corres-

pondiénte. Cierto es que esa sentencia no es obligatoria para nosotros, pero su declaración de doctrina puede ser tenida en cuenta.

La certificación del Obispado de que la firma puesta por el párroco de Guira de Melena en la certificación que ha sido presentada es auténtica no es la aprobación del expediente que se instruyó para la reconstrucción del acta matrimonial, como se declara en la opinión de la mayoría de este Tribunal, y eso es tan claro que el asiento reconstruído fué hecho en el libro parroquial antes de librarse esa certificación. Nadie aprobó ese expediente.

No estoy conforme en que se puede hacer referencia al resolver esta apelación a un documento que no fué presentado en la corte inferior, ni siquiera para que se diga de él que no se le da carácter de fundamento de la opinión de la mayoría.

Aunque la demanda se fundó en que la demandante es hija del matrimonio contraído por Manuela Fernández Perdigón con Juan García Villarraza en 1883, cuya acta es suficiente por sí misma, si se presenta, y no es necesario corroborarla, sin embargo, se presentó y fué admitida prueba del estado de casados en que ambas personas se hallaban, presentándose con tal fin la única declaración del testigo Piña, quien manifestó que conoció a dichas personas viviendo como marido y mujer desde 1883, el 85 o el 87, pero al dar razón de su afirmación dijo que los había visto como tales en una fiesta celebrada en Cuba con motivo de la Paz del Zanjón, en la que tomaron parte varias señoras y entre ellas Manuela Fernández esposa de García Villarraza; pero como tal suceso histórico tuvo lugar en 1878, cuando estaba viva Carmen Beltrán esposa entonces de Juan García Villarraza, esa declaración no puede tener valor para probar el estado de casados. Tampoco puede darse valor a las manifestaciones hechas por Juan García Villarraza al contraer matrimonio con Josefa Aguayo de ser viudo de Manuela Fernández Per-

digón ni a las que hizo en el acta de nacimiento de la demandante de ser ésta hija de su matrimonio con Manuel Fernández Perdigón porque no merecen crédito, ya que falsamente dijo también que Rodolfo era hijo de su matrimonio con Doña Manuela, cuando lo cierto es que se hallaba entonces casado con Carmen Beltrán.

Por lo expuesto entiendo que la sentencia apelada debe ser revocada y declararse sin lugar la demanda.

Estoy autorizado para decir que el Juez Asociado Sr. Wolf está conforme con esta opinión.