EPIFANIA PAGÁN HERNÁNDEZ, promovente y apelada, Ex parte; LEONOR, EUSTACIO y JOSÉ PAGÁN TORRES y MODESTO, LUIS y LUISA PAGÁN COLÓN, interventores y apelantes.

Núm. 10080.—*Sometido:* Enero 9, 1950. *Resuelto:* Enero 31, 1951.

*Ramón G. Goyco,* abogado de los apelantes; *Raúl Matos,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del tribunal.

El 14 de julio de 1948 Epifania Pagán Hernández inició procedimiento sobre declaratoria de herederos en la corte inferior alegando, en síntesis, que su padre Felipe Pagán falleció intestado en la ciudad de Ponce el 2 de junio de 1948, dejando bienes que repartir; que a la fecha de su muerte estaba casado en legítimo matrimonio con Juana Hernández, siendo sus únicos y universales herederos sus legítimos hijos procreados en dicho matrimonio, Eladio, Emilia, Juana-Raimunda, Gracia, Eleuteria, Epifania, Gumersindo, Fernanda y Luciano, todos de apellido Pagán Hernández, y su citada cónyuge viuda. Solicitó que se declararan únicos y universales herederos del causante a sus hijos legítimos ya nombrados y a su cónyuge viuda en la cuota usufructuaria dispuesta por ley.

El 23 de ese mismo mes, Leonor, Eustacio y José-Juan Pagán Torres y Modesto, Luis y Luisa Pagán Colón, alegando ser hijos naturales reconocidos de Felipe Pagán radicaron moción de intervención en el referido procedimiento de declaratoria de herederos. Alegaron que por haber sido reconocidos por acción voluntaria de su padre tenían derecho a la misma cuota que correspondía a cada uno de los hijos legítimos no mejorados. En el propio escrito de intervención impugnaron una partida de matrimonio de Felipe Pagán y Juana Hernández que aparecía en el Registro Parroquial de la ciudad de Ponce, por no ser una inscripción original de matrimonio y sí una reconstrucción reciente de una par-

tida cuya existencia era desconocida, sosteniendo que dicha reconstrucción era ineficaz a todos los fines legales.

A la moción de los interventores se opuso la peticionaria negando que aquéllos tuvieran la condición de hijos naturales del causante, ya que habían sido procreados durante su matrimonio con Juana Hernández, celebrado en el año 1878, por lo cual tenían la condición de adulterinos. Sostuvo la peticionaria que la partida de matrimonio que impugnaban los interventores, reconstruída el 18 de junio de 1948, era eficaz y válida, pero que en el supuesto de que dicha partida fuera nula e ineficaz en derecho, Felipe Pagán y Juana Hernández, desde el 12 de octubre de 1878 hasta el fallecimiento del primero el 2 de junio de 1948, actuaron y se condujeron siempre como esposo y esposa en todos los actos de su vida, habiendo inscrito los nacimientos de los hijos por ellos procreados como hijos legítimos de ambos. Terminó solicitando que se declarara con lugar su instancia sobre declaratoria de herederos y se desestimara la moción de los interventores quienes, según la peticionaria, no tenían derecho a parte alguna de la herencia del causante.

Se celebró una vista en la que ambas partes produjeron prueba documental y testifical, en virtud de la cual el tribunal inferior consideró probado el hecho de la muerte intestada del causante en la fecha alegada en la petición, su matrimonio con Juana Hernández y el carácter de legítimos de los hijos habidos en dicho matrimonio. La prueba documental que sirvió de base para dar por establecido y probado, el hecho del matrimonio—habiendo la peticionaria desistido de probar dicho extremo con la partida reconstruída el 18 de junio de 1948, por reconocer que la misma era ineficaz para tales fines—consistió de los certificados de nacimiento de los hijos, en los que el causante hizo constar que eran hijos legítimos suyos y de su esposa Juana Hernández, así como escrituras públicas en las cuales el causante hacía constar que era casado con la Hernández. Hubo prueba testifical de que ambos vivieron juntos y se condujeron siempre

como casados en la comunidad hasta el fallecimiento del causante.

También declaró hecho probado la corte inferior el haber el causante procreado a los interventores fuera de su matrimonio con Juana Hernández, y el haberlos reconocido a todos por sendas declaraciones juradas suscritas en los meses de julio y octubre de 1945. En consecuencia dictó sentencia declarando con lugar la instancia sobre declaratoria de herederos así como la moción de intervención y declaró únicos y universales herederos del causante a sus hijos legítimos habidos en su matrimonio con Juana Hernández, anteriormente nombrados, a ésta como su cónyuge supérstite en la cuota viudal usufructuaria y a los interventores como sus hijos naturales reconocidos, con todos los derechos conferídosle por ley.

No conforme los interventores apelaron de dicha sentencia para ante este Tribunal señalando como errores (1) el de haber la corte inferior considerado probado el matrimonio de Felipe Pagán y Juana Hernández a virtud de la posesión constante de estado de los padres unida a las actas del nacimiento de sus hijos como legítimos y (2) el de haber apreciado erróneamente la prueba.

■■ Discutiendo su primer señalamiento de error sostienen los apelantes que la corte inferior aplicó indebidamente el artículo 86 del Código Civil, ed. de 1930,(1) ya que las disposiciones del mismo son únicamente aplicables a los matrimonios celebrados con posterioridad al primero de enero de 1885 y no a los celebrados antes de dicha fecha, los cuales, según el artículo 85 de dicho cuerpo legal,(2) se

---

(1) Dicho artículo dispone:

"En el caso a que se refiere el artículo anterior, la posesión constante de estado de los padres, unida a las actas de nacimiento de sus hijos en concepto de legítimos, será uno de los medios de prueba del matrimonio de aquéllos, a no constar que alguno de los dos estaba ligado por otro matrimonio anterior."

(2) Dicho artículo provee:

"Los matrimonios celebrados antes del primero de enero de 1885, en

probarán "por los medios establecidos en las leyes anteriores", y que en todo caso debió haberse probado plenamente el acto de la celebración del matrimonio para luego, establecida la imposibilidad de producir la partida de matrimonio—a consecuencia de incendio ocurrido en la Parroquia el 25 de septiembre de 1880—poder recurrir a prueba supletoria.

Habiéndose alegado que el matrimonio en este caso se celebró con anterioridad al primero de enero de 1885 tienen en verdad razón los apelantes en que de acuerdo con el primer párrafo del artículo 85 del Código Civil dicho matrimonio debe probarse no por los medios establecidos en dicho cuerpo legal para matrimonios celebrados después de esa fecha, y sí por los medios, según reza el propio artículo 85, establecidos *en las leyes anteriores*. Sin embargo, nada abona al caso de los apelantes la correcta interpretación que dan al artículo 85, pues si bien lo dispuesto en el artículo 86 de que "la posesión constante de estado de los padres, unida a las actas de nacimiento de sus hijos en concepto de legítimos, será uno de los medios de prueba del matrimonio de aquéllos, a no constar que alguno de los dos estaba ligado por otro matrimonio anterior", se refiere a los matrimonios y al caso a que hace mención el artículo 85 del Código Civil en su segundo párrafo—matrimonios contraídos después del primero de enero de 1885 y al caso de haber desaparecido el libro de actas de matrimonios provistos por la Ley de Registro Civil—(³) es lo cierto que la legislación vigente en Puerto Rico con anterioridad al primero de enero de 1885, (⁴)

que empezó a regir en Puerto Rico la ley de registro civil, se probarán por los medios establecidos en las leyes anteriores.

"Los contraídos después se probarán sólo por el acta del libro de matrimonios. Si éste hubiese desaparecido, será admisible cualquier prueba adecuada."

(³) Muñoz Morales, Reseña Histórica y Anotaciones al Código Civil, Libro Primero, págs. 241 *et seq.*

(⁴) Recopilación de las Leyes de Indias y las leyes supletorias, según lo en ella dispuesto, de la Recopilación, las de Partidas y las de Toro, quedando estas últimas posteriormente limitadas a la Novísima Recopilación y las de Partidas.

no proveía medios supletorios de prueba del matrimonio en caso de desaparición de los libros parroquiales.(5) En tales circunstancias son de aplicación las disposiciones del artículo 36 de nuestro Código de Enjuiciamiento Civil, que traza la norma a los tribunales para hacer efectiva su jurisdicción cuando no existe un procedimiento especial fijado en ley para ello, al proveer que, en tales casos, "si el procedimiento no estuviere especialmente señalado en este Código o en otra ley, podrá adoptarse cualquier otro procedimiento o modo adecuado que parezca estar más en armonía con el espíritu de este Código".(6) Y es de notarse que el inciso 29 del artículo 464 de dicho cuerpo legal—102 de la Ley de Evidencia—establece, como presunción disputable, la de "Que

La Ley de Matrimonio Civil de 18 de junio de 1870 fué hecha extensiva a Puerto Rico por Real Decreto de 12 de noviembre de 1886, o sea después de estar en vigor aquí la Ley de Registro Civil; pero esta Ley, por Decreto de 9 de febrero de 1875 se declaró no aplicable "en cuanto a los que hayan contraído o contraigan" matrimonio canónigo, que es el que en el caso de autos se alegó haberse celebrado, "el cual se regirá exclusivamente por los sagrados Cánones y las leyes civiles que estuvieren en observancia hasta que se puso en ejecución la referida ley". La "Ley de Enjuiciamiento Civil" para las islas de Cuba y Puerto Rico comenzó a regir aquí el primero de enero de 1886.

(5) Antes del primero de enero de 1885, en que comenzó a regir en Puerto Rico la Ley de Registro Civil, "tenían carácter oficial los Registros Parroquiales que llevaba la Iglesia Católica de acuerdo con las disposiciones del Concilio de Trento (sección 23, año 1563) y autorizados expresamente por R.O. del Gobierno Español de 21 de marzo de 1794 y otras posteriores." Muñoz Morales, ob. cit., pág. 243.

"Los medios establecidos en las leyes anteriores" a que se refiere el artículo 85 del Código Civil "son las actas constantes en los libros a cargo de los párrocos de la Iglesia Católica que tenían autoridad para celebrar matrimonios." Ob. y pág. citados.

En *García et al.* v. *Aguayo et al.*, 32 D.P.R. 422, 433, aun cuando sin dar razonamiento para ello, resolvimos que fué error no permitir el tribunal sentenciador prueba supletoria de un matrimonio que se alegó celebrado en el año 1883 en la Habana, la cual prueba tendió a demostrar que los alegados cónyuges fueron conocidos viviendo juntos, y que así frecuentaban la sociedad de la Habana.

(6) *Hernández* v. *Registrador*, 67 D.P.R. 452.

Siendo de tan clara aplicación a este caso el artículo 36 del Código de Enjuiciamiento Civil, creemos innecesario considerar aquí la pertinencia del artículo 7 del Código Civil, ni la corrección de la doctrina sentada en el caso de *López Zárate* v. *Villavaso*, 12 D.P.R. 53, seguida en *Cividanes* v. *López Acosta*, 22 D.P.R. 79, en el cual se revoca *sub silentio*

un hombre y una mujer que se conducen como casados, han celebrado un contrato legal de matrimonio."

Por otro lado, si es buena regla de ley el medio de prueba supletoria establecido por el artículo 86 del Código Civil para probar el matrimonio celebrado con posterioridad al primero de enero de 1885 cuando ha desaparecido la constancia oficial del matrimonio, también debe serla por virtud del 36 del de Enjuiciamiento Civil para probar un matrimonio celebrado con anterioridad a la indicada fecha, bajo las mismas circunstancias, pues tal medio de prueba está en armonía con el espíritu de este último cuerpo legal. No existe, pues, el primer error señalado.

Tampoco el segundo. La prueba sobre la posesión de estado de los padres fué contradictoria, pero el juez inferior quedó convencido de que Felipe Pagán y Juana Hernández vivieron siempre juntos, bajo un mismo techo, y se condujeron en todo tiempo como casados, hasta la muerte del primero, procreando un crecido número de hijos que fueron inscritos en el Registro Civil en concepto de legítimos. La prueba a ese efecto es suficiente para sostener la conclusión del tribunal inferior. Ésta se fortalece aún más por el hecho de que en todas las declaraciones juradas de reconocimiento de hijos naturales que sirvieron de base a los aquí apelantes para reclamar su condición de herederos y su porción a la herencia del causante, éste hace constar que es *casado con Juana Hernández;* y en la declaración jurada de reconocimiento de Eustacio Pagán, el causante hace constar que lleva a cabo dicho reconocimiento "sin que por ello se lesionen los derechos de mis hijos legítimos habidos en mi matrimonio con Juana Hernández." Del estudio de la prueba en autos estamos convencidos de que el juez actuó correctamente en su apreciación.

*La sentencia será confirmada.*

el de *Ex parte Díaz,* 8 D.P.R. 157, éste último al efecto de que las disposiciones del artículo 7 del Código Civil no son aplicables en materia de procedimiento o de derecho adjetivo, y sí cuando se trata de decidir cuestiones de derecho sustantivo.